**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | : <br> : <br> : |
| Plaintiff, | : <br> : |
| v. | : <br> : |
| THE ESTATE OF LORRAINE M. KELLEY, et al., | : <br> : |
| Defendants. | : <br> : <br> : |

Case No. 3:17-cv-965-BRM-DEA

**OPINION**

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is a Motion by Plaintiff United States of America ("United States" or "Plaintiff") for Summary Judgment on Counts II through V of the Complaint against Defendants the Rose Saloom and the Estate of Richard Saloom.[1] (ECF No. 32.) Defendant Rose Saloom[2] filed an Opposition to the United States' Motion. (ECF No. 37.) Having reviewed the submissions filed in connection with the motions and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below and for good cause shown, the United States' Motion for Summary Judgment is **GRANTED in part and DENIED in part.**

---

[1] On March 2, 2020, the Court entered a Consent Judgment as to Count I of the Complaint against the Estate of Lorraine M. Kelley and Robert J. Lecky. (ECF No. 41.)

[2] Rose Saloom is the daughter of Richard Saloom.

I.      PROCEDURAL AND FACTUAL BACKGROUND[3]

A.      Tax Liability of the Estate of Lorraine M. Kelley

Lorraine M. Kelley ("Kelley") died on December 30, 2003. (ECF No. 32-3 ¶ 1.) Richard Saloom—Kelley's brother—and Richard J. Lecky ("Lecky") were co-executors of her estate. (*Id.* ¶ 2.) On September 23, 2004, Richard Saloom and Lecky, as co-executors of the Estate of Lorraine M. Kelley ("the Kelley Estate"), filed on its behalf Form 706 (United States Tax Return), reporting an estate tax liability of $214,412 and a gross estate of over $1.7 million. (*Id.* ¶ 5.) On October 28, 2004, the IRS opened an examination of the Kelley Estate's estate tax returns. (*Id.* ¶ 6.) On June 27, 2006, Richard Saloom, as co-executor of the Kelley Estate, consented on its behalf to the assessment of an additional tax liability of $448,367, which was based on a corrected gross estate of over $2.6 million, a taxable estate of over $2.3 million, and a total tax of $662,780. (*Id.* ¶ 7-8.) As of September 2, 2019, the total unpaid balance of the Kelley Estate's estate tax liability is $688,644 plus statutory additions accruing after that date. (*Id.* ¶ 10.)

B.      The Administration of the Kelley Estate

Kelley's gross estate included property valued at over $2.6 million on the date of her death, including:

>    a.   her primary residence, valued at $490,000;
>
>    b.   an annuity, valued at over $1 million; and
>
>    c.   stocks and securities, valued at over $900,000

(*Id.* ¶ 11.)

Richard Saloom, the sole beneficiary of the Kelley Estate, distributed and received all the property of the Kelley Estate for free. (*Id.* ¶¶ 11-12.) On August 20, 2004, Richard Saloom and

---

[3] Unless otherwise noted, the facts detailed in this section are not opposed by Defendants.

Lecky sold Kelley's primary residence for $490,000. (*Id.* ¶ 14.) Additionally, Richard Saloom received over $1 million in proceeds from Kelley's annuity, $50,000 of which he gave to Rose Saloom via check cashed on November 8, 2004. (*Id.* ¶¶ 15-16.) Richard Saloom used these proceeds to run his business and buy and develop other property. (*See id.* ¶ 17.) By January 2008, the Kelley Estate had no property, yet still owed over $400,000 in estate tax. (*Id.* ¶¶ 18-19.)

### C.    Richard Saloom's Efforts to Pay

In late 2007, Richard Saloom tried to resolve the Kelley Estate's tax liability and enter into an installment agreement with the IRS, eventually making several significant payments toward the tax liability. (*Id.* ¶¶ 20-21.) Some time before his death in March 2008, Richard Saloom instructed Rose Saloom to continue to make payments to the IRS for the Kelley Estate's tax liability. (*Id.* ¶ 22.) Rose Saloom made several payments on her father's behalf. (*Id.* ¶ 23.)

### D.    The Administration of the Richard Saloom Estate

Richard Saloom died on March 21, 2008 (*Id.* ¶ 25.) Rose Saloom was the executrix of his estate. (*Id.* ¶ 26.) Richard Saloom's gross estate included property valued at over $1.1 million on the date of his death, including:

    a. his primary residence, valued at $220,000;

    b. real property valued at $225,000; and

    c. interests in two companies valued at $305,400 and $312,000, respectively

(*Id.* ¶ 27.)

Rose Saloom, as executrix of the Richard Saloom Estate, filed on his behalf a New Jersey inheritance tax return that listed his debt as including $456,406 in "indebtedness" for "federal tax." (*Id.* ¶ 28.) Additionally, Rose Saloom was the sole beneficiary of the Richard Saloom Estate. (*Id.*

¶ 30.) Eventually, Rose Saloom distributed and received all the property of the Richard Saloom Estate. (*See id.* ¶ 31.) As of now, the Richard Saloom Estate no longer has any property, and Rose Saloom no longer has any property from the Richard Saloom Estate. (*Id.* ¶¶ 32-33.)

### E.    Procedural History

On February 10, 2017, the United States filed a five-count Complaint against Defendants for: reduction of estate tax assessment to judgment against the Kelley Estate (Count I), transferee liability against the Richard Saloom Estate (Count II), fiduciary liability against the Richard Saloom Estate (Count III), fiduciary liability against Rose Saloom (Count IV), and liability against Rose Saloom under the New Jersey Uniform Fraudulent Transfer Act ("UTFA") (Count V). (ECF No. 1.)

On May 5, Rose Saloom filed a Motion to Dismiss the Complaint. (ECF Nos. 7, 9.)[4] On November 28, 2017, this Court denied Rose Saloom's Motion. (ECF No. 13.) On May 23, 2018, Rose Saloom filed an Answer to the Complaint. (ECF No. 19.)

On August 27, 2019, the United States filed a Motion for Summary Judgment against Defendants. (ECF No. 32.) On October 16, 2019, Rose Saloom filed an Opposition to the United States' Motion. (ECF No. 37.) On October 29, 2019, the United States filed a Motion to Approve Consent Judgment as to Count I of the Complaint. (ECF No. 39.) On March 2, 2020, this Court entered a Consent Judgment and Order with respect to Count I of the Complaint against the Kelley Estate and Lecky in the amount of $688,644 as of September 2, 2019 and closed the case. (ECF No. 41.) On March 4, 2020, the United States, by letter, requested this Court re-open the case and restore the Motion for Summary Judgment against Rose Saloom and the Richard Saloom Estate

---

[4] Rose Saloom filed two responses to the Complaint, which the Court construed as a joint Motion to Dismiss. (*See* ECF No. 13 at 3.)

for Counts II through V of the Complaint. (ECF No. 42.) On March 5, 2020, this Court reopened the case and restored Plaintiff's Motion for Summary Judgment. (ECF No. 43.)

## II.   LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A factual dispute is genuine only if there is "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party," and it is material only if it has the ability to "affect the outcome of the suit under governing law." *Kaucher v. Cty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. *Anderson*, 477 U.S. at 248. "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255)); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, (1986); *Curley v. Klem*, 298 F.3d 271, 276-77 (3d Cir. 2002). "Summary judgment may not be granted . . . if there is a disagreement over what inferences can be reasonably drawn from the facts even if the facts are undisputed." *Nathanson v. Med. Coll. of Pa.*, 926 F.2d 1368, 1380 (3rd Cir. 1991) (citing *Gans v. Mundy*, 762 F.2d 338, 340 (3d Cir.), *cert. denied*, 474 U.S. 1010 (1985)); *Ideal Dairy Farms, Inc. v. John Labatt, Ltd.*, 90 F.3d 737, 744 (3d Cir. 1996).

The party moving for summary judgment has the initial burden of showing the basis for its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party bears the burden

of persuasion at trial, summary judgment is appropriate only if the evidence is not susceptible to different interpretations or inferences by the trier of fact. *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999). On the other hand, if the burden of persuasion at trial would be on the nonmoving party, the party moving for summary judgment may satisfy Rule 56's burden of production by either (1) "submit[ting] affirmative evidence that negates an essential element of the nonmoving party's claim" or (2) demonstrating "that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Celotex*, 477 U.S. at 330 (Brennan, J., dissenting). Once the movant adequately supports its motion pursuant to Rule 56(c), the burden shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324; *see also Matsushita*, 475 U.S. at 586; *Ridgewood Bd. of Ed. v. Stokley*, 172 F.3d 238, 252 (3d Cir. 1999). In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. Credibility determinations are the province of the factfinder. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

There can be "no genuine issue as to any material fact," however, if a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322-23. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323; *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992).

### III.   DECISION

#### A.   Transferee Liability against the Richard Saloom Estate (Count II)

The United States contends it is entitled to summary judgment against the Richard Saloom Estate for transferee liability under 26 U.S.C. § 6324(a)(2) for the estate tax liability of the Kelley Estate. (ECF No. 32-2 at 4.)

Section 6324(a)(2) "imposes liability on the transferees of the decedent's estate when the estate itself fails to pay its federal taxes." *U.S. v. Geniviva*, 16 F.3d 522, 524 (3d Cir. 1994). A transferee who receives property from a decedent's estate is personally liable for any unpaid estate tax based on the value of the property received. 26 U.S.C. § 6324(a)(2).

As of September 2, 2019, the Kelley Estate's estate tax liability is $688,644. (ECF No. 32-5.) Richard Saloom received $2.6 million in property from that estate. (*See* ECF No. 32-3 ¶¶ 11-13.) Although—as discussed *infra*—Rose Saloom presents arguments for why she is not liable for the Kelley Estate tax liability, she has not presented evidence to dispute the transferee liability against the Richard Saloom Estate. As such, no genuine issue of material fact exists with respect to the transferee liability against the Richard Saloom Estate.

Accordingly, the United States' Motion for Summary Judgment on Count II of the Complaint is **GRANTED.**

#### B.   Fiduciary Liability against the Richard Saloom Estate (Count III)

The United States also contends it is entitled to Summary Judgment against the Richard Saloom Estate for fiduciary liability under 31 U.S.C. § 3713(b) for the estate tax liability of the Kelley Estate. (ECF No. 32-2 at 5.)

Section 3713 places personal liability on an executor of an estate who pays the debts of the estate, or distributes assets to himself, before paying a claim of the United States. 31 U.S.C.

§ 3713(b). "The federal insolvency statute, 31 U.S.C. § 3713, 'provides that when a person is insolvent or an estate has insufficient assets to pay all of its debts, priority must be given to debts due the United States.'" *United States v. Tyler*, 528 F. App'x 193, 200-02 (3d Cir. 2013) (citing *United States v. Coppola*, 85 F.3d 1015, 1019 (2d Cir. 1996)). Personal liability may be imposed upon a fiduciary of an estate in accordance with 31 U.S.C. § 3713(b). Under the federal priority statute, a fiduciary "paying any part of a debt of . . . [an] estate before paying a claim of the Government is liable to the extent of the payment for unpaid claims of the Government." 31 U.S.C. § 3713(b).

"Personal liability can attach, to the extent of the distribution, if the government establishes three elements: (1) the fiduciary distributed assets of the estate; (2) the distribution rendered the estate insolvent; and (3) the distribution took place after the fiduciary had actual or constructive knowledge of the liability for unpaid taxes." *United States v. Tyler*, No. 10-1239, 2012 U.S. Dist. LEXIS 34093, at *10 (E.D. Pa. Mar. 13, 2012). "The purpose of imposing personal liability on estate representatives 'is to make those into whose hands control and possession of the debtor's assets are placed, responsible for seeing that the Government's priority is paid.'" *Tyler*, 528 F. App'x at 201 (citing *King v. United States*, 379 U.S. 329, 337 (1964)). Of course, for liability to attach, the executor "must have knowledge of the debt owed by the estate to the United States or notice of facts that would lead a reasonably prudent person to inquire as to the existence of the debt owed before making the challenged distribution or payment." *Id.* (citing *Coppola*, 85 F.3d at 1020). The Third Circuit stated:

> In recognition of the insolvency statute's "broad purpose of securing adequate revenue for the United States Treasury, courts have interpreted it liberally." [*Coppola*, 85 F.3d at 1020.] With respect to "the type of payments or 'distributions' from the estate for which an executor may be held liable," "a fiduciary, e.g., an executor, may be held liable under the federal insolvency statute for a distribution of

8

funds from the estate that is not, strictly speaking, the payment of a debt." *Id.* (alteration and internal quotation marks omitted). He may, for example, be held liable for "stripp[ing]" an otherwise solvent estate "of all of its assets and render[ing] it insolvent" by "provid[ing] for the distribution of all of the estate assets" to the heirs of the estate. *Id.* (internal quotation marks omitted).

*Id.*

The United States contends it is entitled to summary judgment because Richard Saloom, as executor of the Kelley Estate, "distributed all of its approximately $2.6 million in property to himself, which rendered the estate insolvent." (ECF No. 32-2 at 6.) Additionally, the United States argues Richard Saloom had at least constructive knowledge of the unpaid tax liability for the Kelley Estate. (*Id.*)

Defendants have not presented any evidence to dispute any of the three elements listed above. First, there exists no genuine dispute of material fact that Richard Saloom distributed the assets of the Kelley Estate and that such distribution rendered the Estate insolvent. (ECF No. 32-3 ¶¶ 11-17.) Additionally, there is no genuine dispute of material fact that Richard Saloom had at least constructive knowledge that there existed at least some tax liability for the Kelley Estate. Indeed, even if the United States has not shown that Richard Saloom had actual knowledge, the facts here would lead a "reasonably prudent person" to inquire as to the existence of the debt owed. A reasonably prudent person would certainly inquire as to the existence of tax liability on a $2.6 million estate such as the Kelley Estate. Additionally, Richard Saloom indicated he had knowledge of the debt by entering into an installment agreement with the IRS and making periodic payments to satisfy the estate tax liability. (*See* ECF No. 32-3 ¶¶ 20-21.)

Accordingly, the United States' Motion for Summary Judgment on Count III of the Complaint is **GRANTED.**

### C.    Fiduciary Liability against Rose Saloom (Count IV)

The United States contends it is entitled to Summary Judgment against Rose Saloom for fiduciary liability under 31 U.S.C. § 3713(b) for the estate tax liability of the Richard Saloom Estate. (ECF No. 32-2 at 7.) Specifically, the United States claims, as executor of the Richard Saloom Estate, Rose Saloom (1) distributed all of the approximately $1.1 million of property of the Richard Saloom Estate to herself, (2) rendered the Richard Saloom Estate insolvent, and (3) made such distributions despite knowing her father's tax liabilities. (*Id.* at 7-8.)

As stated above, personal liability can attach under § 3713(b) if the government establishes three elements: (1) the fiduciary distributed assets of the estate; (2) the distribution rendered the estate insolvent; and (3) the distribution took place after the fiduciary had actual or constructive knowledge of the liability for unpaid taxes." *Tyler*, No. 10-1239, 2012 U.S. Dist. LEXIS 34093, at *10.

In opposition, Rose Saloom contends the United States is not entitled to summary judgment because the United States omitted certain facts from its motion, including that: the IRS conducted an audit of the Kelley Estate, Richard Saloom made several payments toward the Kelley Estate's tax liability, and Rose Saloom "was in contact" with several IRS agents in 2010 and 2012. (*See* ECF No. 37 at 3.) However, these assertions are insufficient to create a genuine dispute of material fact as to whether the United States has satisfied the three elements under § 3713(b).

First, Rose Saloom does not dispute that she distributed all the property of the Richard Saloom Estate to herself. (*See* ECF No. 32-3 ¶ 31.) Additionally, Rose Saloom acknowledges the Richard Saloom Estate is insolvent. (*See id.* ¶ 32.) Finally, Rose Saloom had knowledge of her father's tax liabilities, which is demonstrated by her filing of a New Jersey inheritance tax return that listed "indebtedness" for "federal tax." (*Id.* ¶ 28.) Despite her assertions, the United States has

demonstrated that no genuine dispute of material fact exists as to the three elements. As such, Rose

Saloom is liable under 31 U.S.C. § 3713(b) for the Kelley Estate estate tax liability.

Accordingly, the United States' Motion for Summary Judgment on Count IV of the

Complaint is **GRANTED**.

### D.     Liability against Rose Saloom Under the UFTA (Count V)

Finally, the United States' contends it is entitled to summary judgment against Rose

Saloom under the UFTA for her father's 31 U.S.C. § 3713(b) liability because she is a fraudulent

transferee of his property. (ECF No. 32-2 at 8.)

The UFTA states, in relevant part:

> A transfer made or obligation incurred by a debtor is fraudulent as
> to a creditor, whether the creditor's claim arose before or after the
> transfer was made or the obligation was incurred, if the debtor made
> the transfer or incurred the obligation: a. With actual intent to hinder,
> delay, or defraud any creditor of the debtor, or b. Without receiving
> a reasonably equivalent value in exchange for the transfer or
> obligation, and the debtor:
> (1) Was engaged or was about to engage in a business or a
> transaction for which the remaining assets of the debtor were
> unreasonably small in relation to the business or transaction; or
> (2) Intended to incur or believed or reasonably should have believed
> that the debtor would incur, debts beyond the debtor's ability to pay
> as they become due.

N.J. Stat. Ann § 25:2-25.

The purpose of the UFTA is to prevent a debtor from placing his or her property beyond a

creditor's reach. *Gilchinsky v. Nat'l Westminster Bank*, 732 A.2d 482, 488 (N.J. 1999) (citations

omitted). The premise behind the Act is that "a debtor cannot deliberately cheat a creditor by

removing his property from 'the jaws of execution.'" *Id.* A fraudulent conveyance claim negates

the wrongful transaction, thus allowing a creditor "to bring the property within the ambit of

collection." *Id.* The plaintiff bears the burden of proving that the conveyance was fraudulent. *Jecker v. Hidden Valley, Inc.*, 27 A.3d 964, 969 (N.J. Super. Ct. App. Div. 2011).

The United States has failed to demonstrate that the conveyance of property from the Richard Saloom Estate to Rose Saloom was fraudulent. In the cases on which the United States relies, courts have entered summary judgment and enforced personal money judgment against transferees who were explicitly engaged in schemes to defraud creditors. For example, in *United States v. Patras*, the court entered a personal money judgment against a transferee where the transferor moved property that put that property beyond the reach of the United States. *United States v. Patras*, 909 F. Supp. 2d 400, 412 (D.N.J. 2012). Here, no such intent existed. The transfer of property from the Richard Saloom Estate to Rose Saloom was the result of inheritance. Additionally, the property remained within the reach of the United States via transferee liability as stated above. In looking at the premise of the UFTA, it is clear this type of testamentary transfer is outside the scope of the types of transfers the UFTA is designed to protect against. As such, the United States has failed to demonstrate Richard Saloom had an intent to defraud them.

Accordingly, the United States' Motion for Summary Judgment on Count V of the Complaint is **DENIED**.

### IV.   CONCLUSION

For the reasons set forth above, the United States' Motion for Summary Judgment is **GRANTED** as to Counts II, III, and IV and **DENIED** as to Count V**.** An appropriate order will follow.

Date: October 22, 2020                               */s/ Brian R. Martinotti*_____
                                                                    **HON. BRIAN R. MARTINOTTI**
                                                                    **UNITED STATES DISTRICT JUDGE**